IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION                                                                    PLAINTIFF

V.                                               CIVIL ACTION NO. 3:13cv895-KS-MTP

VICKSBURG HEALTHCARE, LLC
AND COMMUNITY HEALTH SYSTEMS, INC.
D/B/A RIVER REGION MEDICAL CENTER                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Defendant Community Health Systems,

Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of

Process ("Motion to Dismiss") [12] and Motion to Dismiss, or in the Alternative, Motion

for Summary Judgment ("Motion for Summary Judgment") [14].  Having considered the

submissions of the parties, the record, and the applicable law, the Court finds that the

Motion to Dismiss [12] should be granted and the Motion for Summary Judgment [14]

should be denied as moot.

**I.  BACKGROUND**

On September 30, 2013, the Plaintiff Equal Employment Opportunity

Commission ("EEOC") filed this action on behalf of Beatrice Chambers alleging disability

discrimination under Title I of the Americans with Disabilities Act of 1990, as amended,

42 U.S.C. §§ 12111 *et seq.* ("ADA").  (*See* Compl. [1].)  The Complaint names

Community Health Systems, Inc. ("CHSI") and Vicksburg Healthcare, LLC ("VHL") as

Defendants, and asserts that both CHSI and VHL have been continuously doing

business as River Region Medical Center ("River Region") in Vicksburg, Mississippi, at

all times relevant to the Complaint.  The EEOC alleges that Beatrice Chambers was

employed as a nurse at River Region and that the Defendants terminated her employment because of her disability and failed to provide her with a reasonable accommodation in violation of 42 U.S.C. § 12112(a) and (b)(5)(A) of the ADA.

On December 10, 2013, VHL and CHSI filed their Answers to the Complaint. Both Defendants denied any and all liability.  VHL admitted doing business as River Region and employing Beatrice Chambers from approximately 1975 until her termination on October 14, 2011.  CHSI denied doing business as River Region or employing Beatrice Chambers.  In addition, CHSI asserted the affirmative defenses of lack of personal jurisdiction, insufficient process, and insufficient service of process.

On January 27, 2014, CHSI filed its Motion to Dismiss [12], seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) (lack of personal jurisdiction) and (b)(5) (insufficient service of process).  Also on January 27, CHSI filed its Motion for Summary Judgment [14].  CHSI's summary judgment motion is submitted "as an alternative dispositive motion", and posits that CHSI is entitled to judgment as a matter of law because it does not qualify as a statutory employer under the ADA.  (CHSI's Mem. Brief in Supp. of Mot. for SJ [15] at p. 1 n.1.)

The Court finds that the issue of personal jurisdiction over CHSI is controlling. The following circumstances relevant to this issue appear to be uncontested between the litigants.  CHSI was incorporated in Delaware and has its principal place of business in Franklin, Tennessee.  VHL is a subsidiary of CHSI.  VHL was formed in Delaware and has its principal place of business in Franklin, Tennessee.  VHL does business under the fictitious names "River Region Medical Center" and "River Region Health System".

Whether CHSI has jurisdiction establishing contacts with Mississippi, either by virtue of an alter ego relationship with VHL or its own business activities, is the primary dispute presented by the Motion to Dismiss [12].  The Court has fully considered the undisputed facts and the parties' competing contentions and is ready to rule.

## II.  DISCUSSION

### A.    Legal Standards

"When a federal question case is based upon a federal statute that is silent as to service of process," the district court must determine if the defendant is subject to the jurisdiction of the courts of the forum state.  *Aviles v. Kunkle*, 978 F.2d 201, 203-04 (5th Cir. 1992) (citation omitted).  The ADA, under which the EEOC asserts its federal claim, is such a statute.  *See Elliot v. Firearms Training Sys., Inc.*, No. SA-04-CA-0490-RF, 2004 WL 2567619, at *2 (W.D. Tex. Oct. 21, 2004) (examining the Texas long-arm statute in an action alleging discrimination under the ADA).  Therefore, this Court must determine if CHSI is subject to suit in a Mississippi state court.

A non-resident defendant is amenable to being sued in Mississippi if:  (1) Mississippi's long-arm statute confers jurisdiction over the defendant; and (2) the exercise of personal jurisdiction comports with the requirements of federal due process. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000) (citation omitted). Both inquiries are relevant here since "Mississippi's long-arm statute is not coextensive with due process."  *Id.* at 869 n.7.  Mississippi's long-arm statute states in pertinent part:

> Any nonresident . . . who shall make a contract with a resident of this state
> to be performed in whole or in part by any party in this state, or who shall
> commit a tort in whole or in part in this state against a resident or nonresident
> of this state, or who shall do any business or perform any character of work
> or service in this state, shall by such act or acts be deemed to be doing

business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57.  This statute consists of three prongs:  (i) the contract prong; (ii) the tort prong; and (iii) the doing-business prong.  *See Walker v. World Ins. Co.*, 289 F. Supp. 2d 786, 788 (S.D. Miss. 2003).

Due process requires that a defendant "have certain minimum contacts with . . . [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (citations and internal quotation marks omitted). The defendant's minimum contacts may give rise to general or specific personal jurisdiction.  *See Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). "Where the plaintiff alleges specific jurisdiction, as here, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable."  *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (citation omitted), *cert. denied*, 134 S. Ct. 644 (2013). An exercise of general jurisdiction requires that the defendant possess "'continuous and systematic' contacts with the forum state."  *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013) (quoting *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990)).

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154,

1159 (5th Cir. 1983) (citing 2 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 4.25[6], at 4-272 (2d ed. 1982)).  Courts presume corporate separateness, although this presumption may be rebutted by clear evidence of a parent corporation asserting sufficient control over its subsidiary to render the subsidiary its agent or alter ego. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) (citations omitted).  "The rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction."  *Hargrave*, 710 F.2d at 1159 (citations and internal quotation marks omitted).  The Fifth Circuit has set forth several factors to be utilized in determining whether personal jurisdiction can be exercised over a parent corporation based on the actions of its subsidiary.[1]

The plaintiff must establish personal jurisdiction, but need only present a *prima facie* case to meet his burden.  *See Luv n' care, Ltd.*, 438 F.3d at 469 (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).  The Court may decide the jurisdictional issue by receiving affidavits, depositions, interrogatories, and other forms of discovery. *See Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000) (citing *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996)).  The uncontroverted

---

[1] The following considerations are commonly referred to as the *Hargrave* factors:  (1) the amount of stock owned by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) whether they share officers and directors; (4) whether they observe corporate formalities; (5) whether they maintain separate accounting systems; (6) whether the parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over its daily operations.  *See Dickson Marine Inc.*, 179 F.3d at 339 (citing *Hargrave*, 710 F.2d at 1160).

allegations of the complaint are to be taken as true, and factual disputes evidenced by the parties' affidavits are to be resolved in the plaintiff's favor.  *See Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citation omitted).

### B.   Analysis

CHSI argues that only the doing-business prong of Mississippi's long-arm statute is potentially applicable to this dispute.  The EEOC has not rebutted this argument.  Given the EEOC's silence on this issue and its underlying burden to establish personal jurisdiction, the Court's opinion will not address the tort or contract prong of section 13-3-57.

CHSI has submitted an affidavit from Ben C. Fordham, the Senior Vice-President and Chief Litigation Counsel for CHSI, in support of the positions that it does no business in Mississippi and that it lacks sufficient minimum contacts to be haled into court in Mississippi.  (*See* Fordham Aff. [12-1].)   The affidavit states in pertinent part:

- "CHSI is a holding company that has no employees."  (Fordham Aff. [12-1] at ¶ 3.)

- CHSI indirectly owns, through subsidiaries, numerous hospitals nationwide, including VHL "d/b/a River Region Medical Center (the 'Hospital')."   (Fordham Aff. [12-1] at ¶¶ 3-4.)

- CHSI neither operates the Hospital, does business as the Hospital, nor controls the day-to-day operations of the Hospital.  (*See* Fordham Aff. [12-1] at ¶ 5.)

- CHSI and the Hospital maintain separate banking and financial records, and do not commingle funds.  (*See* Fordham Aff. [12-1] at ¶¶ 5-6.)

- CHSI does not employ any Hospital staff or exercise control over individuals employed by the Hospital.  In addition, CHSI was not responsible for any employment decision pertaining to Beatrice Chambers.  (*See* Fordham Aff. [12-1] at ¶ 9.)

- CHSI and the Hospital observe corporate formalities:  there is no overlap between the Board of Trustees of the Hospital and the Board of Directors of CHSI; the respective Boards of the Hospital and CHSI each convene separate meetings; and, the Boards maintain separate minutes and records.  (*See* Fordham Aff. [12-1] at ¶ 15.)

- "CHSI is not, nor has ever been, qualified to do business in Mississippi, has no office or place of business in Mississippi, and owns no real property in Mississippi.  CHSI does not advertise, market or offer services for sale in Mississippi."  (Fordham Aff. [12-1] at ¶ 16.)

- CHSI has never paid taxes in Mississippi or held a Mississippi bank account.  (*See* Fordham Aff. [12-1] at ¶ 17.)

Similar facts have been cited in numerous actions involving the dismissal of nonresident defendants.  *See, e.g.*, *Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.*, 907 F. Supp. 2d 793, 795, 800 (N.D. Miss. 2012); *Weisler v. Cmty. Health Sys., Inc.*, No. 12-0079, 2012 WL 4498919, at *1 (D.N.M. Sept. 27, 2012); *Sizelove v. Woodward Reg'l*, No. CIV-11-0230-HE, 2011 WL 5087997, at *1-3 (W.D. Okla. Oct. 25, 2011); *Dean v. Aurora Australis Lodge*, No. 1:08cv225, 2009 WL 1174841, at *1-2 (N.D. Miss. Apr. 29, 2009); *Samples v. Vanguard Healthcare, LLC*, No. 3:07cv157, 2008 WL 4371371, at *3, 5 (N.D. Miss. Sept. 18, 2008); *Roxco, Ltd. v. Harris Specialty Chems., Inc.*, 133 F. Supp. 2d 911, 912, 916 (S.D. Miss. 2000); *Rockaway Commuter Line, Inc.*, 897 So. 2d 156, 157 (¶¶ 1-2), 158 (¶ 10) (Miss. 2004); *Wilson v. Highpointe Hospitality, Inc.*, 62 So. 3d 999, 1001-02 (¶¶ 8-11) (Miss. Ct. App. 2011); *Hogrobrooks v. Progressive Direct*, 858 So. 2d 913, 920-21 (¶¶ 23-29) (Miss. Ct. App. 2003).

The EEOC primarily argues three points in opposition to dismissal.  First, the February 27, 2013 Form 10-K submitted by CHSI to the United States Securities and Exchange Commission ("SEC") shows that CHSI conducts business in Mississippi.  Second, CHSI exercises control over labor and employment relations at River Region,

as evidenced by the Employee Handbook provided to Beatrice Chambers.  Third, VHL's

contacts with Mississippi can be imputed to CHSI based on an alter ego theory of

personal jurisdiction.  None of these contentions establish a *prima facie* case of

jurisdiction over CHSI.

The EEOC highlights a section of the Form 10-K listing Wesley Medical Center in

Hattiesburg and River Region Health System as owned hospitals, and quotes various

statements in the document using the term "we," such as, "[w]e provide healthcare

services through the hospitals that we own and operate"; [w]e generate revenues by

providing a broad range of general and specialized hospital healthcare services"; "[w]e

employ approximately 2,500 physicians and an additional 600 licensed healthcare

practitioners"; and "we provide standardization and centralization of operations across

key business areas . . . ."  (Form 10-K [19-1 at ECF pp. 14, 18].)  However, the EEOC

ignores the following salient provision of the Form 10-K:

> Throughout this Form 10-K, we refer to Community Health Systems,
> Inc., or the Parent Company, and its consolidated subsidiaries in a simplified
> manner and on a collective basis, using words like "we," "our," "us" and the
> "Company." This drafting style is suggested by the Securities and Exchange
> Commission, or SEC, and is not meant to indicate that the publicly-traded
> Parent Company or any other subsidiary of the Parent Company owns or
> operates any asset, business or property. *The hospitals, operations and*
> *businesses described in this filing are owned and operated, and management*
> *services provided, by distinct and indirect subsidiaries of Community Health*
> *Systems, Inc.*

(Form 10-K [19-1 at ECF p. 14]) (emphasis added).  CHSI has also submitted a second

affidavit from Ben C. Fordham, providing, *inter alia*, that the Form 10-K presents

information in a consolidated fashion as to CHSI and all of its subsidiaries due to

reporting requirements and guidelines dictated by the SEC.  (2d Fordham Aff. [30-1] at

¶ 6.)  The plaintiff's *prima facie* case burden of proof does not require a court to accept conclusory allegations or draw tenuous inferences in his or her favor.  *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citations omitted).  The totality of the Form 10-K fails to support the EEOC's strained contention that CHSI itself, as opposed to one or more of its subsidiaries, does business in Mississippi.  *Cf. Garlock v. Ohio Bell Tel. Co.*, No. 1:13cv02200, 2014 WL 2006781, at *3 (N.D. Ohio May 15, 2004) (rejecting the plaintiff's reliance on a press release and SEC filing in support of the argument that AT & T Inc. conducted business in Ohio since a disclaimer similar to the one quoted above showed "that it is AT & T Inc.'s subsidiaries and affiliates that are conducting business in Ohio, not AT & T Inc. itself"); *Westfield Ins. Co. v. Interline Brands, Inc.*, No. 12-6775, 2013 WL 6816173, at *20 n.23 (D.N.J. Dec. 20, 2013) (dismissing for lack of personal jurisdiction where a claimant's selective citing of the defendant's Form 10-K filing omitted the section indicating that the filing referred to the defendant and its consolidated subsidiaries); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 959 F. Supp. 2d 476, 491-92 (S.D.N.Y. 2013) (finding that an SEC filing, as a whole, showed that a defendant was a typical holding company in granting a Rule 12(b)(2) motion to dismiss).

The portions of the Employee Handbook relied on by the EEOC in opposition to dismissal contain references to "CHS" and "Community Health Systems".  For example, one section states that a "Confidential Disclosure Reporting Program Hotline has been established by CHS for reporting" violations of federal laws, and encourages employees "to immediately alert CHS management to any violations" by calling the hotline "or by writing Community Health Systems . . . ."  (Employee Handbook [19-1 at ECF pp. 22-

23].)  CHSI counters the EEOC's reliance on the Employee Handbook with the second affidavit of Ben C. Fordham.  The second affidavit states in pertinent part:  "CHS" and "Community Health Systems" are trade names for Community Health Systems Professional Services Corporation ("CHSPSC"), which is an indirect subsidiary of CHSI; CHSPSC provides form policies to affiliated hospitals and those hospitals may adopt and implement the policies as they so choose; CHSPSC operates the above-mentioned "Confidential Disclosure Reporting Program Hotline"; CHSI neither authors nor provides employee handbooks or training materials to affiliated hospitals; and, CHSI did not author the excerpts from the Employee Handbook attached as an exhibit to the EEOC's opposition to the Motion to Dismiss.  (*See* 2d Fordham Aff. [30-1] at ¶¶ 3, 5, 7, 8.) Plaintiff's allegations need not be taken as true when they are contradicted by affidavits. *See Wyatt*, 686 F.2d at 282-83 n.13 (citing *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977)).  The Court finds that the affidavit testimony presented by CHSI negates the EEOC's speculative allegation that CHSI controlled employment relations at River Region based on the Employee Handbook.  The Court also finds persuasive an analogous opinion from the Western District of Oklahoma in which the district court held that personal jurisdiction over CHSI was lacking notwithstanding references to "Community Health Systems" and "CHS" in a hospital handbook.  *See Sizelove*, 2011 WL 5087997, at *1, 3.

As noted above, the presumption of corporate separateness may be overcome by clear evidence of a parent corporation asserting such control over a subsidiary as to create an alter ego relationship.  *See Dickson Marine Inc.*, 179 F.3d at 338.  Even through the viewpoint of the EEOC's *prima facie* burden, the Court is unconvinced that

the corporate separation between CHSI and VHL is "pure fiction." *Hargrave*, 710 F.2d at 1160 (quoting *Cannon Mfg. Co. v. Cudahy Packing Co.*, 276 U.S. 333, 337, 45 S. Ct. 250, 69 L. Ed. 634 (1925)).  At best for the EEOC, only two of the *Hargrave* factors (ownership of stock and common headquarters) arguably support the blurring of the companies' corporate lines.[2]  Far more is required for the contacts of VHL to be attributed to CHSI within the Fifth Circuit.  *See, e.g.*, *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000) ("We have said . . . that '100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations.'"); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999) ("[O]ne-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil."); *Replogle v. Shoreline Transp. of Ala., LLC*, No. 3:11cv83, 2012 WL 4755039, at *3 (S.D. Miss. Oct. 4, 2012) (finding insufficient proof of an alter ego relationship even though parent and subsidiary entities shared headquarters and the same registered agent for service of process, and the single employee of the parent corporation was the manager of the subsidiary); *Samples*, 2008 WL 4371371, at *3-4 (declining to exercise personal jurisdiction over a parent company that shared officers and headquarters with its wholly owned subsidiary).  Ultimately, the EEOC has failed to present "proof of control by . . . [CHSI] over the internal business operations and affairs of . . . [VHL] to make . . . [VHL] its agent or alter ego, and hence fuse the two together

---

[2] Ben C. Fordham's first affidavit, quoted above, and the preceding discussion preclude any resolution of the remaining *Hargrave* factors in the EEOC's favor.  *See supra* note 1.

for jurisdictional purposes." *Freudensprung*, 379 F.3d at 346 (citations and internal quotation marks omitted).

Finally, the EEOC's miscellaneous argument that CHSI has a record of minimum contacts with Mississippi based on the case of *Bass v. Community Health Systems, Inc.*, No. 2:00cv193 (N.D. Miss.), is not well taken. The EEOC notes that Judge Davisdon denied CHSI's Motion to Dismiss in that case. Although "the rationale issues and basis [for the denial] do not currently appear in the electronic file", the EEOC surmises that *Bass* "likely" raises similar issues regarding minimum contacts. (EEOC's Mem. in Supp. of Resp. in Opp. to Mot. to Dismiss [20] at p. 9.) The portions of *Bass* placed in the record by CHSI *actually* show: (1) that the case was originally filed in the Western District of Tennessee; (2) that the case was transferred to the Northern District of Mississippi because the events giving rise to the action occurred in Mississippi and two of the Defendants (other than CHSI) were located in Mississippi; and (3) that neither CHSI's Motion to Dismiss nor Judge Davidson's resulting Order on the motion concerned the issue of personal jurisdiction. (*See* Doc. No. [30-2].) The Court's review of the record from *Bass* fails to reveal any facts or circumstances resulting in CHSI being amenable to general or specific personal jurisdiction in this separate action. Moreover, the EEOC "cites no authority holding that a party's decision in prior litigation not to contest jurisdiction prevents it from doing so subsequently." *Westfiled Ins. Co.*, 2013 WL 6816173, at *20 n.23; *see also Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) ("A party's consent to jurisdiction in one case, however, extends to that case alone."); *Chemguard Inc. v. Dynax Corp.*, No. 4:08cv057-Y, 2010 WL 363481, at *3 (N.D. Tex. Feb. 2, 2010) (rejecting the contention that the defendant

waived its objection to personal jurisdiction by removing a separate action from state court); *Toshiba Int'l Corp. v. Fritz*, 993 F. Supp. 571, 574 (S.D. Tex. 1998) (holding that the defendant did not waive his ability to defend under Rule 12(b)(2) by filing a third-party complaint for indemnification in separate litigation brought in the same district).

## III.  CONCLUSION

The EEOC has failed to show that Mississippi's long-arm statute confers jurisdiction over CHSI.  In addition, no showing has been made that CHSI maintains sufficient minimum contacts with Mississippi to render an exercise of jurisdiction over it constitutional.  Therefore, CHSI will be dismissed from this cause for lack of personal jurisdiction.  The Court need not address CHSI's remaining bases for dismissal given this ruling.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss [12] is granted and Defendant Community Health Systems, Inc. is dismissed from this action without prejudice for lack of personal jurisdiction.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion for Summary Judgment [14] is denied as moot.

SO ORDERED AND ADJUDGED this the 22nd day of September, 2014.

s/Keith Starrett
UNITED STATES DISTRICT JUDGE