IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION                                              PLAINTIFF

v.                                          CIVIL ACTION NO. 3:13-cv-895-KS-MTP

VICKSBURG HEALTHCARE, LLC                                           DEFENDANT

## ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Compel [69] and the parties' Joint Motion to Extend Discovery and Related Deadlines [80]. Having considered the submissions of the parties and the applicable law, the Court finds that Plaintiff's Motion to Compel [69] should be DENIED and that the parties' Joint Motion to Extend Discovery and Related Deadlines [80] should be DENIED.

**Joint Motion to Extend Discovery and Related Deadlines [80]**

On January 31, 2014, the Court entered a Case Management Order [17], which set September 2, 2014, as the discovery deadline. After the parties engaged in discovery for three months, Defendant Community Health Systems, Inc. ("Community Health") filed a Motion to Stay Discovery [43] pending the Court's resolution of its Motion to Dismiss [12]. On May 23, 2014, the Court granted the Motion to Stay Discovery [43]. *See* Order [46]. On September 22, 2014, the Court granted Community Health's Motion to Dismiss [12] and dismissed Community Health from this action. *See* Order [47].

On October 22, 2014, the Court entered an Amended Case Management Order [48], which provided the parties more than six months of additional discovery. The Court set May 1, 2015, as the discovery deadline and set May 15, 2015, as the motions deadline. On April 3,

1

2015, the parties filed their Motion [80] seeking to extend the discovery and motions deadlines by forty-five days.[1]

The trial court is afforded broad discretion to preserve the integrity and purpose of the pretrial order. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990). Case deadlines can be modified only by order of the Court upon a showing of good cause supported with affidavits, other evidentiary materials, or reference to portions of the record. *See* Amended Case Management Order [48]; Fed. R. Civ. P. 16(b)(4). The good cause standard "require[s] the movant to show that the deadline cannot be met despite the diligence of the party needing the extension." *Puig v. Citibank, N.A.*, 514 Fed. App'x. 483, 487-88 (5th Cir. 2013) (citation and quotation omitted). In determining whether the movant has met its burden under Rule 16(b)(4), the Court considers four factors: (1) the party's explanation for its failure to meet the deadline, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice. *S&W Enters., LLC v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003); *Geiserman*, 893 F.2d at 791.

The parties assert that they have engaged in written discovery and have deposed only two witnesses, but they advise the Court that they intend to depose at least six more witnesses. The parties also intend to file and respond to unspecified discovery motions and schedule a settlement conference or private mediation. According to the parties, the limited availability of counsel and certain witnesses has delayed the discovery process. Unspecified scheduling issues, however, do not justify an extension of the discovery period. The parties were afforded more

---

[1] The Amended Case Management Order [48] also set the discovery deadline as the deadline for completing a private mediation or a settlement conference, and the parties seeks to extend the ADR deadline along with the discovery deadline.

than nine months of discovery and have failed to specifically explain why they cannot meet the deadlines established in the scheduling order.

Thus, the parties have not provided persuasive justification for an additional forty-five days of discovery. Further, the parties did not establish the importance of additional discovery, nor did they identify what information they hope to gain from an extended discovery period. Additionally, the parties' requested forty-five day extension cannot be granted without affecting the current trial setting, and a continuance is not warranted based on the current record.

A continuance would result in additional delay of this case, which was originally filed on September 30, 2013. *See Geiserman*, 893 F.2d at 792. "Moreover, a continuance would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Id*. On balance, the factors weigh in favor of denying the Motion [80].

If the parties have specific issues or concerns, however, they are encouraged to contact the chambers of the undersigned to schedule a status conference or scheduling conference.

**Motion to Compel [69]**

This is an employment discrimination case brought under the Americans with Disabilities Act. Plaintiff Equal Employment Opportunity Commission ("EEOC") alleges that Defendant Vicksburg Healthcare, LLC d/b/a River Region Medical Center ("River Region") terminated Beatrice Chambers because of her alleged disability. On February 20, 2015, Plaintiff served an Amended Request for Entry on Land for Inspection and other Purposes,[2] which requested:

> Pursuant to Federal Rule of Civil Procedure 34(a)(2), Plaintiff, United States Equal

---

[2] On January 16, 2015, Plaintiff served Defendant with its original Request for Entry on Land for Inspection and Other Purposes. *See* Request [69-3]. On February 13, 2015, Defendant served its objections to Plaintiff's Request. *See* Objections [69-4].

3

> Employment Opportunity Commission ("Plaintiff" or "EEOC" or the "Commission") hereby requests that Defendant Vicksburg Healthcare, LLC ("Defendant") permit Entry Upon Land for Inspection and Other Purposes to its medical facility located in Vicksburg, Mississippi, and otherwise known as River Region Medical Center (the"Facility"), located at 2100 Highway 61 North, Vicksburg, MS 39180. Such inspection will be for the limited purpose of fact discovery, so the Plaintiff may inspect, examine and observe: the general operations of the Surgical Services Department (the "Department") of River Region Medical Center, the type of equipment and/or instruments commonly in use at the Facility, the layout of the Department, and the feasibility of certain accommodations; collect measurements as to the amount of force required in order to push/pull certain equipment, and observe the day to day job functions and duties of: the Licensed Practical Nurse ("LPN") position, the LPN II position, the Tech position, and the Unit Secretary position.

*See* Request [69-5]. The inspectors/observers would include Beatrice Chambers, Plaintiff's attorney, and Plaintiff's vocational rehabilitation expert. *Id.* Plaintiff's request is subject to a number of qualifications and restrictions, including limiting the duration of the inspection to three hours. *Id.*

> On March 23, 2015, Defendant objected to Plaintiff's request as follows:
>
> River Region objects to the requested inspection on the ground that it does not describe the requested entry with reasonable particularity, as is required by Fed. R. Civ. P. 34. For this reason, River Region further objects to the request as confusing and vague. Additionally, River Region objects to the request as unduly intrusive and burdensome, harassing, and overly broad. Because no information that could conceivable be obtained from an inspection of the operations of the Surgical Department is reasonably calculated to lead to the discovery of admissible evidence, the request is irrelevant. To the extent Plaintiff seeks information related to the essential functions or particular tasks of a Gastroenterology LPN II, River Region has already provided said information and more to Plaintiff, and it is undisputed that the lifting and pushing of heavy objects are essential functions of the job. River Region also objects to the requested inspection, as it would necessarily reveal confidential and proprietary information, including information subject to the physician-patient privilege (or like privilege) and the Health Insurance Portability and Accountability Act ("HIPPA"). Lastly, River Region objects to the request as an impermissible attempt to circumvent the safeguards prescribed be the Federal Rules for deposing witnesses and, therefore, beyond the proper scope of Fed. R. Civ. P. 34.

*See* Objection [69-6]. On March 25, 2015, Plaintiff filed its Motion to Compel [69] seeking an

order from the Court allowing it to conduct the above-described inspection.

The federal rules permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. In reviewing a motion to compel, courts must take into account that discovery rules "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Fed. R. Civ. P. 34(a)(2) governs the entry of a party onto another party's property for the purposes of conducting discovery. Pursuant to this rule, "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."

Like all discovery, however, the right to inspect under Rule 34 "has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Courts may limit "the frequency or extent of discovery" if they determine that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C). "When considering a motion under Rule 34(a)(2) 'the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the

5

inspection."' *Banks v. The Interplast Group, Ltd.*, 2003 WL 21185685, at *1 (S.D. Tex. April 16, 2003) (quoting *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978)). Where the burdens and dangers that would accompany the inspection outweigh the degree to which it will aid in the search for the truth, the inspection should not be permitted.

Plaintiff argues that the requested inspection is necessary to allow its expert to render an opinion regarding the essential functions of the LPN II job and whether Beatrice Chambers could perform the essential functions with or without reasonable accommodations. According to Plaintiff, it wishes to observe the equipment commonly used by LPNs within the Surgical Services Department ("Department") and measure the amount of force required to push, pull, and/or lift such equipment. Plaintiff also wishes to observe the distances which LPNs must carry the equipment, the proximity in which LPNs work with each other, the curtains and doors, if any, that separate the work areas, and the ease with which the LPNs can call on each other for assistance. Additionally, Plaintiff seeks to interview River Region employees during the inspection in order to gather background information and understand the operations of the Department and job duties of select positions within the Department.

According to Plaintiff, these observations will allow it to gain an understanding of the "normal" operations of the Department and the duties an LPN II. Plaintiff does not identify any specific equipment or task that it wishes to observe and/or measure. Instead, Plaintiff wishes to observe and/or measure the equipment which LPNs commonly use and observe the tasks which LPNs commonly perform. However, it is unlikely that the three-hour inspection Plaintiff wishes to conduct would reliably establish which tasks LPNs commonly perform or which equipment they commonly use. According to the Vice President of Human Resources at River Region,

"[t]he essential functions of a Gastroenterology LPN II, including the lifting and pushing of heavy objects, are not necessarily performed on any given day. The work performed in this position does not consist of stationary, repetitive tasks." *See* Affidavit of Anita Oliphant [81-1].

Plaintiff mentions that the equipment it wishes to observe and measure may include gurneys, beds, and wheelchairs. Plaintiffs wishes to measure the amount of force required to push, pull, and/or lift such equipment. However, the amount of force required to push, pull, and/or lift equipment such as gurneys, beds, and wheelchairs will depend on the weight of the patient in the gurney, bed, or wheelchair. Plaintiff did not establish that the three-hour inspection would allow it to observe a representative sample of patients or duties. Thus, the information gathered during the inspection would likely be of limited use. The proposed inspection would allow Plaintiff to glimpse the operations of the Department and gather information regarding the physical structure or layout of the facility.[3]

Having considered the usefulness of the requested inspection, the Court must balance that usefulness against the burdens and dangers that would accompany the inspection and the availability of other discovery mechanisms. According to Defendant, the inspection would consume considerable time and expense. Defendant asserts that River Region personnel, including at least one manager or supervisor, would have to stay with the inspectors/observers and ensure that they adhere to all applicable medical protocols and regulations. Defendant also assert that the inspection would create safety concerns and compromise patients' rights to confidentiality.

---

[3] The Court also notes that Plaintiff seeks this inspection to allow its expert to render an opinion regarding the essential functions of the jobs within the Department, yet Plaintiff's expert designation was due on February 5, 2015.

7

The Court finds that the time which would be expended and the expense which would be incurred by Defendant during the inspection would not be a significant burden. The Court, however, is convinced that the possible disruption of patient care and the risk of compromising patients' rights to confidentiality are significant concerns. Plaintiff would not determine which tests it will perform until the inspection is underway and while the Department is operating. Plaintiff would seek to test equipment once the equipment is being *utilized* to treat patients. River Region personnel would be subject to roving depositions while they attempt to perform their duties. It is likely the inspection would significantly disrupt the Department's operations.

Also, it appears that the inspection may result in the disclosure of patients' confidential information. According to Plaintiff, the inspectors/observers will not seek to communicate with any patient, will not attempt to make any requests of patients, will not seek medical records, will not seek any personally identifiable information, and will not observe patients undergoing any procedures. Plaintiff, however, seeks to observe the "normal" operations of the Department, and the "normal" operations of the Department would likely include the communication or observation of patients' confidential information.

Plaintiff cites various cases in which courts have allowed inspections under Rule 34. Many of the cases, however, involve inspections of manufacturing plants and like facilities.[4] Unlike the case *sub judice*, the jobs at issue in those cases consist of essential functions that can be easily observed because the jobs are comprised of repetitive tasks. Additionally, the

---

[4] For example, Plaintiff cites *Eirhart v. Libbey-Owens-Ford Company*, 93 F.R.D. 370 (N.D. Ill. 1981), in which a court allowed an inspection of a special production line at a plant, and *Navarro Pecan Co. v. Camilla Pecan Co.*, 2014 U.S. Dist. LEXIS 26466, at *6 (N.D. Tex. Feb. 21, 2014), in which a court allowed an inspection of a pecan processing plant.

inspections allowed in those cases did not involve the risk of compromising patients' confidentiality. Plaintiff also cites a few cases in which courts allowed inspections of medical facility.[5] The inspections allowed in those cases, however, did not appear to involve the same risk of disruption or risk of compromising patients' confidentiality rights as does this case. The courts in those cases did not allow a party to observe medical professionals as they treated patients.[6] Moreover, the Court has determined that the information gathered during Plaintiff's requested inspection would likely be of limited use.

In light of these concerns regarding patient privacy and treatment disruption, the requested inspection should not be permitted. Plaintiff may acquire information regarding the essential functions of the jobs within the Department through other reasonable means. For example, Beatrice Chambers should know the essential functions of her former job as well as anyone. According to Plaintiff, Chambers began her medical career at River Regions in 1975, earned her LPN certification in 1981, and at all times relevant to the instant litigation, worked as an LPN II in the Department. Plaintiff may also obtain information through various other means, such as depositions of other LPNs, a 30(b)(6) deposition of Defendant, or other discovery mechanisms.

Finally, the Court again notes that Plaintiff seeks this inspection, at least in part, to allow

---

[5] For example, Plaintiff cites *Csiszer v. Wren*, 2008 WL 5071874, at **7-8 (W.D. Ark. Nov. 25, 2008), in which a court allowed a limited inspection of a labor and delivery facility, and *Osborne v. Billings Clinic*, 2015 WL 1412626, at * *4-5 (D. Mont. March 26, 2015), in which a court allowed a limited inspection of an emergency department.

[6] Plaintiff also cites cases in which courts allowed extensive inspections of mental health facilities (*N.O. v. Callahan*, 110 F.R.D. 637 (D.Mass. 1986) and *New York State Ass'n for Retarded Children Inc. v. Carey*, 706 F.2d 956 (2d. Cir. 1983)).

its expert to render an opinion in this case. As Plaintiff's deadline for designating experts expired months ago, this is plainly an insufficient basis for such an inspection.

IT IS, THEREFORE, ORDERED that:

1. Plaintiff's Motion to Compel [69] is DENIED and

2. the parties' Joint Motion to Extend Discovery and Related Deadlines [80] is DENIED.

3. If the parties have specific issues or concerns, they are encouraged to contact the chambers of the undersigned to schedule a status conference or scheduling conference.

SO ORDERED this the 22nd day of April, 2015.

                                            s/ Michael T. Parker
                                            United States Magistrate Judge